Filed 11/21/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083358 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. FSB056642) |
| JAMES LAMONT BAGSBY, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Bernardino County, Annemarie G. Pace, Judge.  Affirmed.

Jason Anderson, District Attorney, and Robert Luby, Deputy District Attorney, for Plaintiff and Appellant.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

INTRODUCTION

James Lamont Bagsby was convicted and sentenced to a total prison term of 107 years to life for violent crimes he committed when he was 15 years old.  In 2023, after serving more than 15 years of his sentence, he filed

a petition for recall and resentencing under Penal Code[1] section 1170, subdivision (d) (section 1170(d)). This provision expressly applies only to juveniles sentenced to explicitly designated terms of life without the possibility of parole.[2] However, in *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), this court held that to deny juvenile offenders sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing under section 1170(d) violates the constitutional guarantee of equal protection of the laws. Bagsby argued he was sentenced to the functional equivalent of life without parole, and under *Heard* he had the right to petition for recall and resentencing.

The trial court agreed with Bagsby that *Heard* was controlling and granted his petition for recall and resentencing. Although the People opposed granting Bagsby's petition, the People conceded, and the trial court agreed, that upon resentencing, Bagsby was entitled to the ameliorative benefits of recent changes in juvenile law. The court ruled the consequence of granting resentencing was that Bagsby had to be released because he could not be transferred to adult criminal court and fell outside the jurisdiction of juvenile court. However, the court stayed the release order pending this appeal.

On appeal, the People ask us to remedy the equal protection violation we found in *Heard* by striking down the section 1170(d) resentencing provision. If we decline, they alternatively ask us to reconsider *Heard*. The People further contend the trial court possessed jurisdiction to resentence Bagsby and erred by ordering his release, a reversal of the position they took

---

[1]   Further unspecified statutory references are to the Penal Code.

[2]   For brevity, we will refer to life without the possibility of parole as life without parole.

2

in the trial court. Bagsby cross-appeals the stay order. We reject both parties' challenges and affirm the orders.

Here, we observe that many of the People's concerns, although legitimate, are not for this court to resolve. For example, they question whether there is still a need for the section 1170(d) resentencing provision now that the Legislature has afforded youth offender parole hearings even to juveniles with life without parole sentences, and they argue that it would be more appropriate, or "fitting," for the resentencing provision to be stricken. The People's opinions about the wisdom of allowing the provision to remain in place reflect policy concerns that are the domain of the Legislature and would appropriately be directed at that body.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### *The Underlying Convictions and Sentence*

In June 2006, Bagsby and three of his friends were sitting in the bleachers of a middle school. All four boys were members of the Magnolia Estates street gang. A group of young men, mostly Hispanic, arrived at the school to play basketball. Bagsby approached the group and asked where they were from. Although each in the group answered they were from "nowhere," meaning they were not affiliated with any gang, Bagsby apparently suspected at least one belonged to a rival gang. He pulled a semiautomatic pistol from his waistband and began shooting at the group of young men on the basketball court. He killed an 11-year-old boy and hit another youth in the hand. Bagsby testified at trial that he was afraid someone would shoot him so he pulled out his gun and began shooting without looking. Bagsby was arrested shortly after the shooting and has

3

remained in custody ever since. He was 15 years old at the time of his crimes and subsequent arrest.

A jury convicted Bagsby of second degree murder with the use of a firearm (§§ 187, subd. (a), 12022.53, subds. (b)–(d)) and 10 counts of assault with a semiautomatic firearm (§§ 245, subd. (b), 12022.5, subds. (a), (d)).[3] In 2010, he was sentenced to an indeterminate term of 40 years to life (consisting of 15 years to life for the murder plus 25 years to life for the firearm enhancement) consecutive to a determinate term of 67 years. His total sentence was 107 years to life.

In 2011, this court affirmed the judgment on direct appeal. Bagsby, who had a mild intellectual disability,[4] challenged only his sentence, contending it constituted cruel and unusual punishment. We concluded the cumulative sentence imposed for second degree murder and 10 counts of assault with a firearm and the attached enhancements, though "harsh," was not unconstitutional. (*People v. Bagsby* (Sept. 20, 2011, D058197) [nonpub. opn.].)

## II.

*Changes in the Law Governing Juvenile Prosecution and Punishment*

After Bagsby was convicted and sentenced, there was a seismic shift in the law governing juvenile punishment. (See *O.G. v. Superior Court* (2021) 11 Cal.5th 82, 88 (*O.G.*) [describing the shift as a " 'sea change in penology' "]; *Heard, supra*, 83 Cal.App.5th at pp. 615–620 [summarizing the "sea change"

---

[3]    The criminal case in which Bagsby was charged, convicted, and sentenced for these offenses was San Bernardino County Superior Court case No. FSB056642 (sometimes referred to as the San Bernardino shooting case).

[4]    As noted in our prior opinion, Bagsby called a neuropsychologist who testified that he had an I.Q. score of 79.

4

in juvenile sentencing law].) "These changes were based upon developments in scientific research on adolescent brain development confirming that children are different from adults in ways that are critical to identifying age-appropriate sentences." (*O.G.*, at p. 88.) As a result of this shift, the punishment that could validly be imposed on juvenile offenders was curtailed. The changes in law also restricted prosecutors' authority to charge juveniles in adult criminal court.

*Roper v. Simmons* (2005) 543 U.S. 551 triggered this shift. In *Roper*, the United States Supreme Court held for the first time that the Eighth Amendment categorically prohibits sentencing juvenile offenders to death. Five years later, in *Graham v. Florida* (2010) 560 U.S. 48, 82, the high court went a step further and held the Eighth Amendment also categorically prohibits sentencing nonhomicide juvenile offenders to life without parole, and that to avoid an Eighth Amendment violation, states must give such offenders "some realistic opportunity to obtain release." Then, in *Miller v. Alabama* (2012) 567 U.S. 460, 489 (*Miller*), the high court extended *Graham*'s reasoning to homicide cases, holding the Eighth Amendment forbids sentencing schemes that make life without parole mandatory for juvenile offenders convicted of homicide. And in *People v. Caballero* (2012) 55 Cal.4th 262, 268, the California Supreme Court extended the holding of *Graham* even further and held the Eighth Amendment prohibits sentencing juvenile offenders to a "term-of-years sentence that amounts to the functional equivalent of a life without parole sentence." (*Caballero*, at p. 268; see *id.* at pp. 265, 268 [finding a sentence of 110 years to life "amounts to the functional equivalent of a life without parole sentence"].)

In response to *Miller*, the Legislature enacted section 1170(d), effective January 1, 2013, the resentencing provision at issue here. (Stats. 2012,

ch. 828, § 1, eff. Jan. 1, 2013; § 1170, former subd. (d)(2)(A)–(J), now subd. (d)(1)–(13).) The provision "created 'a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses and who were given [life without parole] sentences.' " (*Heard*, *supra*, 83 Cal.App.5th at pp. 617–618.) Under section 1170(d), "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, former subd. (d)(2)(A)(i), now subd. (d)(1)(A).)

In the petition, "the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true." (*In re Kirchner* (2017) 2 Cal.5th 1040, 1049 (*Kirchner*), citing § 1170, former subd. (d)(2)(B), now subd. (d)(2).) "The qualifying circumstances are (1) the defendant 'was convicted pursuant to felony murder or aiding and abetting murder provisions of law'; (2) the defendant does not have juvenile felony adjudications for assault or other violent felonies prior to the offense that resulted in the sentence being considered for recall; (3) the defendant committed the offense with at least one adult codefendant; or (4) the defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation." (*Heard*, *supra*, 83 Cal.App.5th at p. 618, citing § 1170, former subd. (d)(2)(B)(i)–(iv), now subd. (d)(2)(A)–(D).) "If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant." (*Kirchner*, at p. 1050, citing § 1170, former subd. (d)(2)(E), now subd. (d)(5).)

6

A year later (effective January 1, 2014), the Legislature enacted section 3051 " 'to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*.' " (*Heard*, *supra*, 83 Cal.App.5th at p. 619; see § 3051, subd. (b)(1)–(3), added by Stats. 2013, ch. 312, § 4.)  Section 3051 "requires the Board of Parole Hearings to conduct a 'youth offender parole hearing' at specified times during the incarceration of certain youthful offenders." (*People v. Sorto* (2024) 104 Cal.App.5th 435, 443–444 (*Sorto*).)  "As originally enacted, section 3051 created a schedule of youth offender parole hearings for juvenile offenders sentenced to a determinate term, a life term of less than 25 years to life, or a life term of 25 years to life" (*Heard*, at p. 619) but not for juvenile offenders sentenced to life without parole (*id.* at p. 619, fn. 8).  Relevant here, section 3051 made juveniles sentenced to a term of 25 years to life eligible for a youth offender parole hearing during their 25th year of incarceration.  (§ 3051, subd. (b)(3), added by Stats. 2013, ch. 312, § 4.)

Then, in *Kirchner*, our high court held that section 1170(d) was inadequate to cure *Miller* error.  (See *Kirchner*, *supra*, 2 Cal.5th at pp. 1054–1055 [stating § 1170(d) "provides only a selective and qualified remedy . . . premised on an inquiry that may, but does not necessarily, overlap with the one demanded under *Miller*"].)  In response, the Legislature amended section 3051 to add subdivision (b)(4), which affords juveniles sentenced to life without parole youth offender parole hearings during their 25th year of incarceration.  (§ 3051, subd. (b)(4), added by Stats. 2017, ch. 684, § 1.5.)  However, the Legislature did not repeal the section 1170(d) resentencing provision, which remained and continues to remain operative.

In 2022, this court interpreted section 1170(d) to limit eligibility for recall and resentencing to juvenile offenders sentenced to explicitly designated life without parole terms.  (*Heard*, *supra*, 83 Cal.App.5th at

7

pp. 612, 622–626.)  But we concluded that to deny juvenile offenders sentenced to the functional equivalent of life without parole the opportunity to petition for recall and resentencing violated the constitutional guarantee of equal protection.  (*Id.* at pp. 612, 626–634.)

In addition to granting relief to juvenile offenders who were already imprisoned, the shift in approach to juvenile punishment that started with *Roper* prompted changes to laws that allowed minors to be prosecuted as adults.  Historically, offenders younger than 16 could not be prosecuted in adult criminal court.  (*O.G., supra*, 11 Cal.5th at p. 88.)  "In 1995, California began to move away from the historical rule when the Legislature permitted some 14 and 15 year olds to be transferred to criminal court. . . .  This trend . . . culminated with Proposition 21 in 2000.  For specified murders and sex crimes, Proposition 21 required prosecutors to charge minors 14 years old or older directly in criminal court[, commonly referred to as direct filing]. . . .  For other specified serious offenses, Proposition 21 provided prosecutors with discretion to charge minors 14 or older directly in criminal court instead of juvenile court."  (*Ibid.,* citations omitted.)  Bagsby was charged and convicted during this period.

Then, in 2016, California voters "implemented a series of criminal justice reforms through the passage of Proposition 57."  (*O.G., supra*, 11 Cal.5th at p. 88.)  Among other provisions, Proposition 57 amended the Welfare and Institutions Code to eliminate direct filing by prosecutors.  (*Id.* at pp. 88–89.)  "Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated."  (*People v. Superior Court* (*Lara*) 4 Cal.5th 299, 305 (*Lara*).)

8

"For minors 16 or older, prosecutors can seek transfer to criminal court for any felony offense," whereas "[f]or 14 and 15 year olds, prosecutors could seek transfer to criminal court only for specified serious or violent offenses." (*O.G.*, at pp. 88–89.)

Effective January 1, 2019, Proposition 57 was amended by the Legislature through Senate Bill No. 1391 (2017–2018 Reg. Sess.) (Senate Bill 1391). The amendment "eliminat[ed] the transfer of juveniles accused of committing crimes when they are 14 or 15 years old, unless they are first apprehended after the end of juvenile court jurisdiction." (*O.G., supra*, 11 Cal.5th at p. 89, citing Welf. & Inst. Code, § 707, subd. (a)(1)–(2).) Following the enactment of Senate Bill 1391, "16 again became the minimum age for transferring a minor to criminal court." (*O.G.*, at p. 89.) Senate Bill 1391 is a constitutional amendment of Proposition 57. (*O.G.*, at p. 103.) Proposition 57 and Senate Bill 1391 are retroactive in that they apply to juveniles with nonfinal judgments. (*Lara, supra*, 4 Cal.5th at p. 309 [Proposition 57 is ameliorative and applies retroactively under the rule of *In re Estrada* (1965) 63 Cal.2d 740, 745]; *In re A.M.* (2024) 102 Cal.App.5th 557, 565–568 [Senate Bill 1391 is ameliorative and applies retroactively to nonfinal judgments under *Estrada*].)

### III.

### *Bagsby Petitions for Recall and Resentencing*

In August 2023, after more than 15 years of incarceration, Bagsby filed a petition for recall and resentencing under section 1170(d). Although he was not sentenced to an explicitly designated term of life without parole, he argued his 107-year-to-life sentence was the functional equivalent of life without parole, and that he was therefore eligible to petition for resentencing under the equal protection holding of *Heard*. He argued his petition was

9

complete and met all applicable statutory requirements, including the requirement that he demonstrate by a preponderance of the evidence that a qualifying circumstance was true.

The People opposed Bagsby's petition. They did not dispute that a 107-year-to-life sentence is the functional equivalent of life without parole or argue that Bagsby failed to meet section 1170(d)'s other eligibility requirements. Instead, they argued that *Heard* was "improperly decided." (Capitalization and boldface omitted.) They also urged the court to deny relief based on the consequences of granting Bagsby's petition. They argued that "[r]ecalling and resentencing [Bagsby] will make his judgment nonfinal which will result in the trial court regaining jurisdiction and a duty to consider changes in the law," including changes to Welfare & Institutions Code section 707 effected by Proposition 57 and Senate Bill 1391. They stated that because Bagsby was 15 years old at the time of the offenses and was apprehended before the end of juvenile court jurisdiction, "juvenile jurisdiction [would] appl[y]," "[t]he People would be unable to seek transfer to a court of criminal jurisdiction," and Bagsby would have to be released.

At the hearing on Bagsby's petition, the prosecutor submitted an abstract of judgment showing that in 2019, while he was in custody, Bagsby was convicted of two new drug offenses for which he was sentenced to a consecutive term of six years and a concurrent term of four years.[5] The court stated it intended to grant the petition and order Bagsby's release, but that it understood Bagsby would not be released from "all of his charges, only these

---

[5] The criminal case in which Bagsby was charged and convicted of these new offenses was Riverside County Superior Court case No. BLF1700232 (sometimes referred to as the Riverside drug case).

10

charges," meaning only the charges stemming from the San Bernardino shooting case.

## IV.

*The Trial Court Enters an Order Recalling Bagsby's Sentence and Releasing Him from Custody "On These Charges"*

The trial court granted Bagsby's petition for recall and resentencing in a formal written order entered on November 3, 2023. In the order, the court rejected the People's invitation to disregard *Heard*. It also declined to be influenced by the People's invocation of the specter of Bagsby's release, stating, "[T]he consequence of following the law is not an argument not to adhere to the law this court is obligated to follow." Because the People's legal arguments were unavailing and they had not challenged the factual bases for the petition, the court determined it was required to grant the petition and recall Bagsby's sentence.

The trial court then considered the law that governed resentencing. It stated that "Proposition 57 was enacted in 2016 to eliminate direct filing of cases against juveniles in adult court," and that in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), "the California Supreme Court held that Proposition 57 applies to a resentencing when a criminal court sentence imposed on a juvenile offender before the passage of Proposition 57 has been vacated. That is the case here." The court continued, "In order to move a case to adult court the prosecution would have to make a motion under Welfare & Institutions Code [section] 707 to transfer the minor to adult court. However, under [section] 707[, subdivision] (a)(2), for a minor 14 or 15 years old at the time of the offense, they have to not have been apprehended prior to the end of juvenile court jurisdiction. [Bagsby] was apprehended before the end of juvenile court jurisdiction." Citing Welfare & Institutions Code section 607

11

("Retention of jurisdiction"),[6] the court found Bagsby "also now falls outside of juvenile court jurisdiction." The court concluded, "As [Bagsby] exceeds juvenile court jurisdiction, [he] is ordered released from custody *on these charges*." (Italics added.) The words "on these charges" were handwritten, and they appear to have been added by the trial court after the hearing to clarify that Bagsby was to be released from custody *only* as to the charges in the San Bernardino shooting case and *not* as to the charges in the Riverside drug case.

At the People's request, the trial court also subsequently clarified that although its November 3 order did not say so explicitly, under Proposition 57, Bagsby's convictions for second degree murder and assault were converted to juvenile adjudications as a matter of law.[7]

## V.

### *The Trial Court Stays the Order*

At the request of the People, the trial court stayed its November 3, 2023 order for one week. During that week, the People filed a notice of appeal of the November 3 order. They also filed a brief in which they asked the court to stay the November 3 order pending their appeal. On November

---

[6] Welfare & Institutions Code section 607 authorizes the juvenile court to retain jurisdiction over persons up to specified age limits. (See *ibid.* [juvenile court generally may retain jurisdiction until the person is 21, 23, or 25 years old]; see also *O.G.*, *supra*, 11 Cal.5th at p. 93 [stating that Welf. & Inst. Code, § 1800, subd. (a) "permits the prosecutor to petition for an extension of juvenile court jurisdiction, even past the age of 25, if discharging a juvenile offender 'would be physically dangerous to the public' "].)

[7] The record does not reflect that Bagsby opposed the People's request, objected to the court's clarification of its ruling, or disagreed with its interpretation of Proposition 57, nor has Bagsby appealed the November 3 order or challenged the court's subsequent clarification of it.

12

13, the court granted this request, stating the stay would endure "to the filing of the remittitur." Bagsby then filed a notice of appeal of the November 13 stay order.

DISCUSSION

I.

*Because* Heard *Was Correctly Decided, We Reject the People's Challenges to the November 3, 2023 Order*

The People raise three challenges to the trial court's November 3, 2023 order granting Bagsby's petition for recall and resentencing and directing his release from custody "on these charges." In their first (and primary) challenge, they ask us to remedy the equal protection violation found in *Heard* by striking the resentencing provision from section 1170. If we decline to strike down the resentencing provision, in their second challenge, they alternatively ask us to reconsider *Heard*. In their third challenge, they contend the trial court erred when it ruled that it lacked jurisdiction to resentence Bagsby. These challenges raise claims of legal error that we review de novo. (*People v. Brooks* (2018) 23 Cal.App.5th 932, 941.) We take up their request to reconsider *Heard* first.

A.     Heard *Was Correctly Decided*

To put the People's first challenge in context, we will start by summarizing *Heard*.

*Heard* involved an equal protection challenge to section 1170(d)(1), the provision that specifies which defendants are eligible to petition for resentencing. (See § 1170, subd. (d)(1)(A) ["When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit

13

to the sentencing court a petition for recall and resentencing."].)  The defendant in *Heard* had been sentenced in 2008 to a term of 23 years plus 80 years to life for crimes he committed when he was 15 and 16 years old. (*Heard*, *supra*, 83 Cal.App.5th at pp. 612–614.)  After serving 15 years of his sentence, he filed a petition for recall and resentencing.  (*Id.* at p. 621.)  The trial court denied the petition because the defendant was not sentenced to an explicitly designated life without parole term.  (*Id.* at pp. 621–622.)

On appeal, the defendant argued that section 1170(d)(1), properly interpreted, applied to juvenile offenders sentenced to the functional equivalent of life without parole.  (*Heard*, *supra*, 83 Cal.App.5th at p. 612.)  He alternatively argued that a contrary interpretation would violate his constitutional right to equal protection of the laws.  (*Ibid.*)  We rejected the defendant's interpretation of section 1170(d)(1) based on the plain language of the statute.  (*Heard*, at pp. 612, 622–626.)  However, we agreed with him that to deny juvenile offenders who were sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing violated the equal protection guarantee.  (*Id.* at pp. 612, 626–634.)

Because we considered the defendant's appeal before our Supreme Court clarified the standard for equal protection challenges in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*), we analyzed the defendant's equal protection claim under the then-existing two-step framework.  (See *Heard*, *supra*, 83 Cal.App.5th at pp. 627–633 [considering first whether " ' " 'two or more *similarly situated* groups' " ' " were being treated in an unequal manner, and second whether there was a rational basis for the differential treatment].)  At the first step, we concluded that because the defendant was sentenced to the functional equivalent of life without parole, he was similarly situated with the juvenile offenders who were eligible to petition for

resentencing under section 1170(d)(1) because they were sentenced to explicitly designated life without parole terms. (*Heard*, at pp. 627–631.)

At the second step, we tried to identify a rational basis "for making juvenile offenders sentenced to explicit life without parole terms eligible to seek resentencing but not juvenile offenders sentenced to the equivalent of a life without parole sentence." (*Heard*, *supra*, 83 Cal.App.5th at p. 632.) We considered and rejected the only justification offered by the People, which was: "[T]he Legislature 'could have reasonably concluded' " life without parole was excessive, and the statutory resentencing opportunity was " 'an appropriate means of reform.' " (*Ibid.*) We found this justification inadequate because "the same concern applies equally to juveniles sentenced to the functional equivalent of life without parole." (*Ibid.*)

Next, we considered on our own two additional possibilities. We explored whether the differential treatment could be justified by the relative culpability of each group. But after observing that section 1170(d)(1) made resentencing available to juvenile offenders convicted of special circumstance murders, which "are considered 'the most heinous acts' proscribed by law,' " we determined that the "gravity of the crimes committed by the two groups of juvenile offenders . . . fails to explain their differential treatment." (*Heard*, *supra*, 83 Cal.App.5th at p. 633.) Finally, we considered whether the Legislature "might have viewed a juvenile offender whose multiple offenses cause him to receive a lengthy term-of-years sentence as more culpable, and more deserving of severe punishment, than an offender who commits a single, albeit more serious offense." (*Ibid*.) But we rejected this as a justification, too, after recognizing that section 1170(d)(1) did not prohibit juveniles sentenced to a term of life without parole "*plus additional terms imposed for*

15

*additional offenses or enhancements* from petitioning for resentencing." (*Heard,* at p. 633.)

"[U]nable to identify a rational basis for making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under section [1170(d)(1)]," we concluded that denying the defendant "the opportunity to petition for resentencing under this provision violates his right to equal protection of the laws." (*Heard, supra,* 83 Cal.App.5th at pp. 633–634.)

The People offer three reasons why we should reconsider *Heard.* But because *Heard* is a decision of this court, the People must provide us with a compelling reason to depart from it. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9. ["[a]bsent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division"]; accord *In re Harper* (2022) 76 Cal.App.5th 450, 470, fn. 13.) As we will explain, they fail to do so.

1.     Franklin *Is Consistent with* Heard

The People's first argument is based on *People v. Franklin* (2016) 63 Cal.4th 261. In *Franklin*, a juvenile offender claimed his 50-year-to-life sentence was a de facto life without parole sentence that was unconstitutional under *Miller, supra,* 567 U.S. 460. (*Franklin*, at pp. 268, 271–273.) Our high court found it did not need to decide this issue because section 3051, which was enacted after the defendant was sentenced, had rendered it moot. (*Franklin*, at pp. 268, 278.) The court took care to clarify that the defendant's original sentence had not been vacated and continued to remain binding. (See *id.* at p. 278 [explaining that even after the enactment of § 3051, the defendant's original sentence had "continued operation" and

16

"an inmate remains bound by that sentence"].)  However, it stated the post-sentencing enactment of section 3051 meant the defendant was "*now* serving a life sentence that includes a meaningful opportunity for release" such that "no *Miller* claim arises here."  (*Franklin*, at pp. 279–280, first italics added.)

The People argue the holding of *Franklin* means the nature of Bagsby's sentence was changed by section 3051 so that it was no longer the functional equivalent of life without parole by the time he petitioned for resentencing, making Bagsby "not similarly situated with those defendants who are eligible to petition for resentencing."  This does not give us a compelling reason to overturn *Heard.*  We considered and rejected this very argument in *Heard.*

There, as here, the People claimed the defendant was not similarly situated with resentencing-eligible offenders.[8]  As here, they relied on *Franklin* and argued that "section 3051 has ' "reformed" ' [the defendant's] sentence so that it is no longer the functional equivalent of life without parole."  (*Heard, supra*, 83 Cal.App.5th at p. 628.)  We rejected this argument based on the plain language of section 1170(d)(1).  We explained this

_____

[8]    In *Hardin*, our high court "dispens[ed] with the threshold 'similarly situated' test in equal protection challenges" and held that "[t]he only pertinent inquiry" in such cases "is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin, supra*, 15 Cal.5th at pp. 850–851.)  At the same time, it did not "call into question any of [its] precedent that purported to dispose of an equal protection challenge" at the threshold, explaining that "the conclusion in each of those cases could just as well have been cast as a conclusion about whether the difference in treatment was adequately justified under the applicable standard of review." (*Id.* at p. 851.)  Accordingly, after *Hardin*, the People's argument about whether juvenile offenders like Bagsby or the defendant in *Heard* are similarly situated with the defendants who are eligible to petition for resentencing under section 1170(d) can be understood as an argument about whether the differential treatment is adequately justified under rational basis review.

17

provision " 'uses the phrase "*was sentenced*" and refers to the past.' " (*Heard*, at p. 629, quoting *People v. Lopez* (2016) 4 Cal.App.5th 649, 654 (*Lopez*); see § 1170, subd. (d)(1)(A) ["When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (Italics added.)].) Thus, we concluded the statute explicitly made eligibility to petition for resentencing contingent on the nature of the defendant's original sentence. We observed that in *Franklin* our high court stated section 3051 "did not alter the defendant's original sentence." (*Heard*, at p. 629.) We explained, "[a]lthough under *Franklin*, [the defendant's] sentence as it currently operates is no longer the functional equivalent of life without parole, this does not change the fact that the sentence *was* a de facto life without parole sentence at the time it was imposed. Because [section 1170(d)(1)(A)] refers to the 'offense for which the defendant *was sentenced* to imprisonment for life without the possibility of parole' (italics added), and [the defendant] was sentenced to the functional equivalent of a life without parole sentence, he is similarly situated with the juvenile offenders whose sentences make them eligible to seek resentencing." (*Ibid.*)

The People acknowledge that in *Heard* we rejected their current argument based on the plain language of section 1170(d)(1). And they do not dispute that *Heard* carries authoritative weight because it is a decision of this court. They simply state: "Although the People are cognizant that this court has spoken . . . and that the plain language 'was sentenced' is law of the case . . . , the People respectfully request that the court reconsider whether the nature of sentence now, as articulated in *Franklin*, should be applied

18

instead." But they do not go on to provide us with a basis for reaching a different conclusion than we reached in *Heard*. They do not grapple with the text of section 1170(d)(1) or offer any reason why it should be construed differently. Rather, they merely assert: "[T]he *Franklin* language [stating that section 3051 did not alter the defendant's original sentence, which continued to be binding] could be interpreted to mean that the nature of the sentence changing to one that allows for a meaningful opportunity for release has not undermined the validity of the original sentence." This assertion is consistent with, not contrary to, the analysis in *Heard*.

Moreover, in three published decisions, the appellate courts have now agreed on the proper interpretation of section 1170(d). The first was *Lopez*, *supra*, 4 Cal.App.5th at page 654, on which we relied in *Heard*. (See *Heard*, *supra*, 83 Cal.App.5th at p. 629.) In *Lopez*, two defendants sentenced to life without parole for crimes they committed as juveniles filed habeas petitions based on *Graham* and had their sentences reduced to life with the possibility of parole. (*Lopez*, at p. 652.) The defendants then filed petitions for recall and resentencing, which the trial court granted. The People argued on appeal that the defendants were not eligible for resentencing because they were no longer serving life without parole terms. The Court of Appeal disagreed based on the plain language of the statute, which "uses the phrase 'was sentenced' and refers to the past." (*Id.* at p. 654.) Because the defendants "were sentenced to life without the possibility of parole . . . the literal and 'plain meaning' of the statute was satisfied." (*Id.* at pp. 653–654.) The court further noted that if the Legislature "intended to exclude defendants whose [life without parole] sentence were modified to cure an Eighth Amendment/*Graham* sentencing error, it could have so provided." (*Id.* at p. 655.)

The second was *Heard*.

The third was *Sorto*, *supra*, 104 Cal.App.5th 435, a recent decision of Division Three of the Second Appellate District. In *Sorto*, a defendant sentenced to 10 years plus 130 years to life for crimes he committed in 2005, when he was 15 years old, petitioned for resentencing under section 1170(d). The trial court denied the petition even though the defendant met all of the statute's eligibility requirements, per *Heard*. (*Sorto*, at pp. 440–441.) On appeal, the People urged the appellate court to affirm by arguing that *Heard* was wrongly decided for a variety of reasons. The court rejected all of the People's arguments and reversed. Among other things, the court agreed with the interpretation given to section 1170(d) in *Lopez* and *Heard*, and it concluded the plain language of section 1170(d) "does not require that the defendant currently be serving [a life without parole] sentence." (*Sorto*, at pp. 447–448.) In reaching this conclusion, the court added a significant observation of its own: "This interpretation finds further support in the fact that the Legislature amended section 1170(d) several times after *Lopez* was decided, but it has never clarified that an offender must currently be serving [a life without parole] term to be eligible for relief. . . . Because we may presume the Legislature is aware of existing laws and judicial decisions when it enacts and amends statutes . . . , this history strongly suggests the Legislature agreed with *Lopez*." (*Sorto*, at p. 448, citations omitted.) We agree with this observation, which lends further support to the conclusion we reached in *Heard*.

In short, the People fail to argue let alone establish that our interpretation of the text of section 1170(d)(1) in *Heard* was incorrect. Their inability to identify a compelling reason for disagreeing with this aspect of *Heard* is fatal to their effort to have us overturn it. (*Estate of Sapp*, *supra*, 36

20

Cal.App.5th at p. 109, fn. 9; *In re Harper, supra*, 76 Cal.App.5th at p. 470, fn. 13.)

### 2. Hardin *Is Consistent with* Heard

The second basis on which the People ask us to reconsider *Heard* is based on *Hardin*, in which the California Supreme Court considered an equal protection challenge to section 3051. The defendant in *Hardin* argued that section 3051 violated equal protection by denying youth offender parole hearings to young adult offenders sentenced to actual life without parole (see § 3051, subd. (b)(4)) while granting them to other young adult offenders. (*Hardin, supra*, 15 Cal.5th at pp. 858–864.) Our high court disagreed and concluded "[i]t was not irrational for the Legislature to exclude from youth offender parole eligibility those young adults who have committed special circumstance murder, an offense deemed sufficiently culpable that it merits society's most stringent sanctions." (*Id.* at p. 864.) The People claim there "is ample reason for this court to reconsider its ruling in *Heard*" because it "does not square with the Supreme Court's approach to a similar issue in *Hardin*." We disagree, for two reasons.

First, the People raised this argument for the first time in their reply brief, even though *Hardin* was decided before the People filed their opening brief on appeal. " '[P]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*People v. Smithey* (1999) 20 Cal.4th 936, 1017, fn. 26 (*Smithey*).) No such showing of good cause has been presented here; the People simply

21

asserted the argument in their reply brief without acknowledging or attempting to explain their delay.9  Accordingly, the contention is forfeited.

The argument also lacks merit.  Contrary to the People's contention, *Hardin* does not provide "ample reason" for reconsidering *Heard.*  Instead, *Hardin* is consistent with *Heard.*  In *Sorto*, the Court of Appeal recently had the opportunity to explain why *Hardin* and *Heard* are consistent, albeit in response to a slightly different argument.  There, the court stated:  "*Hardin* holds the Legislature reasonably may disfavor explicit [life without parole] offenders based on the rationale that they are more culpable than functionally equivalent [life without parole] offenders. . . .  In *Heard* . . . the

_____

9      We acknowledge that *Hardin* was decided only one day before the People filed their opening brief on appeal.  However, the short interval between *Hardin* and the People's opening brief does not excuse their decision to wait until their reply brief to assert the argument.  They could have, but did not, ask for the opportunity to supplementally brief the argument to ensure that Bagsby would have notice of it and the opportunity to respond.  (See Cal. Rules of Court, rule 8.200(a)(4) [additional briefing authorized if permitted by the presiding justice]; Adv. Com. com., 23 pt. 3 West's Ann. Cal. Codes, Court Rules (2017 ed.) foll. Cal. Rules of court, rule 8.254 [a party may ask the presiding justice for permission to file supplemental briefing under rule 8.200(a)(4)]; *People v. Gonzalez* (2021) 65 Cal.App.5th 1167, 1173, fn. 4 [appellant granted permission to file a supplemental opening brief raising an additional issue].)  Instead, they waited more than three months—until after Bagsby had already filed his response brief—to raise it, thereby depriving Bagsby of notice of the issue and the ability to present opposing arguments.  (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277–278 [" 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–766 [belated briefing of issue not justified by appellant's retention of new attorney where there was a substantial gap in time between the change in counsel and the filing of appellant's reply brief].)

22

court considered the opposite situation, asking whether it is reasonable to grant relief to explicit [life without parole] offenders while denying the same relief to functionally equivalent [life without parole] offenders. . . . Although *Hardin* does not resolve that issue, it nevertheless eliminates one possible justification for the disparate treatment: the relative culpability of each group of offenders." (*Sorto*, *supra*, 104 Cal.App.5th at p. 446, citations omitted.) We agree with this reasoning, which refutes the People's current argument, and adopt it here. In short, the People's argument based on *Hardin* does not provide us with a compelling reason for overturning *Heard*.

3. *The People Fail To Show That the Disparity in Section 1170(d) Is Justified by the Availability of Youth Offender Parole Hearings Under Section 3051*

The People's third argument in support of reconsidering *Heard* is based on "statutory changes," specifically, the enactment of section 3051. (Capitalization, boldface, and underlining omitted.) The People attempt to show that section 3051 gave the Legislature a rational basis for the differential treatment in section 1170(d).

This argument, too, has been forfeited. The People have asserted it for the first time in reply without showing good cause for the delay. (*Smithey*, *supra*, 20 Cal.4th at p. 1017, fn. 26.)

It is also unpersuasive. The People's point appears to be that for at least some period of time after section 3051 was initially enacted, a juvenile sentenced to an explicitly designated life without parole term was ineligible for a youth offender parole hearing, whereas a juvenile like Bagsby whose lengthy sentence included a life term of 25 years to life was eligible for a youth offender parole hearing. (See § 3051, subd. (b)(1)–(3), added by Stats. 2013, ch. 312, § 4.) They portray this as a difference that justified the Legislature in limiting the scope of the section 1170(d) resentencing

23

provision. But the People ignore that the resentencing provision was enacted *before*, not after, section 3051. When section 1170(d) was enacted, there was no disparity in the availability of youth offender parole hearings because they did not exist.

Furthermore, as the People acknowledge, the Legislature has now "exten[ded] section 3051" to grant youth offender parole hearings to juveniles with life without parole sentences. (See § 3051, subd. (b)(4), added by Stats. 2017, ch. 684, § 1.5.) They assert that youth offender parole hearings are now available to "all minors sentenced as adults."[10] They therefore fail to identify an existing, plausible reason for the disparity in the section 1170(d) resentencing provision, and accordingly they do not provide a compelling reason for us to disagree with *Heard*.

B.    *The People Fail To Show the Legislature Would Prefer for Section 1170(d) To Be Stricken*

As noted, the People's first and primary contention on appeal is that we should reconsider the remedy for the equal protection violation. Namely, they ask us to find that section 1170(d)(1)(A), the provision that authorizes

---

[10]    In fact, section 3051 excludes certain offenders from receiving youth offender parole hearings. (See § 3051, subd. (h) [stating § 3051 "shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or Section 667.61"]; *Heard*, *supra*, 83 Cal.App.5th at p. 632, fn. 16 [discussing this exclusion].) However, the People do not acknowledge this exclusion or argue that it justifies the difference in eligibility to petition for recall and resentencing under section 1170(d). Nor do we independently regard the exclusion as affording such a justification, as it encompasses offenders with different types of sentences, including both explicitly designated terms of life without parole as well as life terms of 25 years to life. (See *People v. Williams* (2024) 17 Cal.5th 99, 119 [stating "25 years to life or [life without parole]" may be imposed when a defendant is sentenced under § 667.61, subds. (l), (m), or (n)].)

defendants to petition for resentencing is "unconstitutional and strike it down."

We decline the invitation. It is true that "[w]hen a court concludes that a statutory classification violates the constitutional guarantee of equal protection of the laws, it has a choice of remedies." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1207, overruled on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888; see *Hofsheier*, at p. 1207 [observing parenthetically that the available remedies include invalidating the statute].) However, in making that choice we must be guided by the Legislature's preference. "In choosing the proper remedy for an equal protection violation, our primary concern is to ascertain, as best we can, which alternative the Legislature would prefer." (*Hofsheier*, at p. 1207; accord *People v. Fisher* (2021) 71 Cal.App.5th 745, 759.)

The People fail to demonstrate that the remedy they urge us to adopt is the one the Legislature would prefer. They claim that striking the resentencing provision would be "fitting" because it was held in *Kirchner* to be inadequate to cure *Miller* error. They also express the view that deleting the provision would be "fitting" because "there exists another law, [section 3051, subdivision (b)(4)], which has been found to conform to current case law, and largely fulfills the legislative purpose of [section 1170(d)(1)(A)]."

We are not persuaded. If anything, the circumstances the People identify undermine, rather than support, their extraordinary request. Both of the developments they rely on—the addition of subdivision (b)(4) to section 3051, and our Supreme Court's decision in *Kirchner*—happened in 2017. (See *Kirchner*, *supra*, 2 Cal.5th 1040; Stats. 2017, ch. 684, § 1.5.) The Legislature has amended section 1170 several times since 2017. (See e.g., Stats. 2018, ch. 36, § 18; Stats. 2018, ch. 1001, § 2; Stats. 2020, ch. 29, § 15; Stats. 2021,

25

ch. 695, § 5.)  And yet it has never repealed the section 1170(d) resentencing provision, despite its presumed awareness of *Kirchner* and subdivision (b)(4) of section 3051.  (See *Sorto*, *supra*, 104 Cal.App.5th at p. 448 [courts "presume the Legislature is aware of existing laws and judicial decisions when it enacts and amends statutes"].)  Had the Legislature truly preferred for *Kirchner*, or the amendment of section 3051, to result in the elimination of subdivision (d)(1)(A) from section 1170, it could have done so itself on one of these occasions.  But it did not.

In *Sorto*, the Court of Appeal concluded that the Legislature's failure to "repeal section 1170(d) after it amended section 3051 . . . suggests the Legislature intended section 1170(d) to provide relief in addition to the relief provided under section 3051." (*Sorto*, at p. 448.)  We agree with this conclusion.  Similarly, the Legislature's failure to repeal the resentencing provision after *Kirchner* was decided suggests it intended for the relief afforded by the provision to remain available even though it did not cure *Miller* error.  In short, by leaving the provision in place, the Legislature has signaled its preference for it to persist rather than to be stricken in response to the developments identified by the People.

In addition, because the People have brought their request to strike the resentencing provision more than two years after we decided *Heard*, we have additional evidence of legislative intent in the Legislature's response to *Heard*.  Since 2022, when *Heard* was decided, the Legislature has continued to amend section 1170.  (See Stats. 2023, ch. 131, § 155; Stats. 2023, ch. 218, § 3; Stats. 2023, ch. 560, § 2.5.)  Had the Legislature preferred for the equal protection violation we identified in *Heard* to be remedied by striking subdivision (d)(1)(A) from section 1170, it could have accomplished that result

26

itself.  Instead, it has left the provision intact.  We take this as further evidence it does not prefer for the provision to be stricken.

C.    *The People Do Not Establish That the Trial Court Erred When It Concluded That Bagsby Exceeded Juvenile Court Jurisdiction*

The People's final challenge is to the trial court's finding that Bagsby "exceeds juvenile court jurisdiction."  The People claim this finding was incorrect and the court did possess jurisdiction to resentence him.  They assert that if a trial court "has jurisdiction" to recall a defendant's sentence on equal protection grounds under section 1170(d), then it "has jurisdiction" to resentence the defendant under section 1170(d).  (Capitalization, boldface and underlining omitted.)  Although their arguments are difficult to understand, they appear to use the word "resentence" as synonymous with the imposition of criminal punishment.

Bagsby contends the People have forfeited this challenge by taking the opposite position in the trial court.  Specifically, he points out the People argued that if the trial court granted his petition, it would result in his release because the court would lack jurisdiction to impose a new criminal punishment.  The People do not dispute Bagsby's claim of forfeiture.  Their reply brief is silent on the topic.  Indeed their reply brief is devoid of any argument at all in support of their claim that the trial court possessed jurisdiction to "resentence" Bagsby.  We take the People's silence as an implicit concession the challenge is forfeited, and we accept that concession.  (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [claims not raised in the trial court generally may not be raised for the first time on appeal].)  As we will explain, the challenge also lacks merit.

The trial court's conclusion that Bagsby "exceeds juvenile court jurisdiction" was the consequence of its determination that once it recalled his sentence, he was entitled to the retroactive benefits of Proposition 57.

27

" ' "Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors." ' " (*O.G.*, *supra*, 11 Cal.5th at p. 89.) The court also impliedly concluded that Bagsby was entitled to the retroactive benefits of Senate Bill 1391, which amended Proposition 57 to "eliminat[e] the transfer of juveniles accused of committing crimes when they are 14 or 15 years old, unless they are first apprehended after the end of juvenile court jurisdiction." (*O.G.*, at p. 89, citing Welf. & Inst. Code, § 707, subd. (a)(1)–(2).) As we have mentioned, Proposition 57 and Senate Bill 1391 are retroactive in that they apply to defendants with nonfinal judgments under the rule of *Estrada*. (*Lara, supra*, 4 Cal.5th at p. 309 [Proposition 57]; *In re A.M., supra*, 102 Cal.App.5th at pp. 565–568 [Sen. Bill 1391].) The People do not dispute that this is so.

Whether the trial court reached the correct conclusion about the scope of its jurisdiction therefore "depends on whether [Bagsby's] resentencing under section [1170(d)] affected the finality of his judgment." (*People v. Montes* (2021) 70 Cal.App.5th 35, 46.) The trial court answered this question in the affirmative by relying on *Padilla*. In *Padilla*, the California Supreme Court held that Proposition 57 applied retroactively during the resentencing of a defendant whose previously final life without parole sentence was vacated in a habeas corpus proceeding. (*Padilla, supra,* 13 Cal.5th at pp. 158–159.) The defendant in *Padilla* murdered his mother and conspired to murder his stepfather when he was 16 years old. He was convicted in adult criminal court and was sentenced to life without parole. (*Id.* at p. 159.) After successfully challenging his sentence by a habeas corpus petition, the trial court again imposed life without parole. (*Ibid.*) The defendant appealed, "arguing that he was entitled to a transfer hearing under Proposition 57 because his case became nonfinal once his sentence was

28

vacated." (*Ibid.*) The Court of Appeal agreed. Our high court granted the Attorney General's petition for review and affirmed. (*Ibid.*)

On review, the Attorney General conceded the vacatur of the defendant's sentence made the judgment in his case nonfinal. (*Padilla*, *supra*, 13 Cal.5th at p. 161.) Our high court agreed, stating, "When [the defendant's] sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and [the defendant] regained the right to appeal whatever new sentence was imposed. His judgment thus became nonfinal, and it remains nonfinal in its present posture[.]" (*Id.* at pp. 161–162; see *id.* at p. 163 ["once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence"].) Because the defendant's judgment became nonfinal after his sentence was vacated, "Proposition 57 applies to his resentencing." (*Id.* at p. 170.)

The trial court's conclusion that *Padilla* was controlling, if correct, is outcome determinative. And yet the People make almost no effort to distinguish *Padilla*. They offer nothing more than the bare observation that *Padilla* did not "deal[ ] with a situation where resentencing was triggered by an equal protection claim" that resulted in the defendant being permitted to seek resentencing under section 1170(d)(1). Although this observation is true, we see no reason why *Padilla*'s holding should not apply in this scenario. When a court grants a petition for recall and resentencing filed under section 1170(d)(1), it is required to "recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced[.]" (§ 1170, subd. (d)(5).) This language has been interpreted to

29

mean that granting resentencing under the section 1170(d) recall and resentencing provisions results in a nonfinal judgment that entitles the defendant to the retroactive benefits of ameliorative laws such as Proposition 57. (*Montes, supra,* 70 Cal.App.5th at pp. 47–48.) The same consequence follows whether or not the defendant becomes eligible to file a petition for recall and resentencing pursuant to section 1170(d)(1) by virtue of an equal protection claim.

The People's remaining efforts to establish error are just as unavailing. They appear to argue that the *Estrada* rule of retroactivity does not apply where it would result in no new punishment. This is incorrect. The ameliorative laws that have been held to be retroactive under *Estrada* include laws that allow criminal defendants to avoid criminal punishment altogether. (See e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 630–636 [holding that newly enacted mental health diversion statutes, §§ 1001.35 and 1001.36, apply retroactively under *Estrada*]; *People v. Wright* (2006) 40 Cal.4th 81, 94–95 [newly enacted affirmative defense to transporting marijuana applies retroactively under *Estrada*]; *People v. Rossi* (1976) 18 Cal.3d 295, 299–302 [new statutory amendment decriminalizing the defendant's sexual acts applied retroactively under *Estrada*].) " ' "[T]he common law principles reiterated in *Estrada* apply a fortiori when criminal sanctions have been completely repealed." ' " (*Wright,* at p. 94.)

The People also argue the trial court's ruling conflicted with subdivision (a)(1) of section 1170, which states, "[w]hen a sentence includes incarceration . . . [t]his purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offenses under similar circumstances." They assert that the trial court's failure "to

30

resentence [Bagsby] . . . does not meet the legislative intent" of this provision. This ignores, however, that in Proposition 57 and Senate Bill 1391, the voters and the Legislature have determined the criminal consequences that are appropriate for people who commit even serious crimes when they are 14 or 15 years old.

Next, the People contend the trial court's ruling does not "reflect the wider case law," by which they mean the decisions that include *Miller* and end with *Franklin* and *Kirchner*. (Capitalization, boldface and underlining omitted.) They assert that in these cases, "the defendant who received relief was remanded to a lower court for resentencing." But most of these cases were decided before Proposition 57 and Senate Bill 1391 took effect, and none of them considered the retroactive effect of these enactments.[11] "A case is not authority for propositions not considered." (*People v. Chavez* (2020) 54 Cal.App.5th 477, 480.)

The People additionally argue "the trial court's ruling finding no jurisdiction to resentence [Bagsby] does not follow the written requirements of [section] 1170(d)." (Capitalization, boldface and underlining omitted.) Although their argument is difficult to follow, it appears to rest on the

---

[11] *Kirchner*, which involved a defendant who committed murder when he was 16 and was sentenced to life without parole, was decided in 2017. (See *Kirchner*, *supra*, 2 Cal.5th at pp. 1042–1043.) This was after Proposition 57 became effective but before Senate Bill 1391 was enacted. (See *Lara*, *supra*, 4 Cal.5th at p. 304 [Prop. 57 became effective Nov. 9, 2016]; *O.G.*, *supra*, 11 Cal.5th at p. 89 [Sen. Bill 1391 became effective Jan. 1, 2019].) However, *Kirchner* considered only whether the defendant needed to demonstrate exhaustion of the resentencing remedy in section 1170(d) prior to seeking habeas corpus relief. The *Kirchner* court did not mention the recent passage of Proposition 57 or consider whether it would have retroactive effect in the event the defendant's petition for habeas corpus was granted.

position that the word "resentence" in section 1170(d)(5) creates jurisdiction to impose a new criminal punishment. (See § 1170, subd. (d)(5) ["If the court finds by a preponderance of the evidence that one or more of the statements specified in subparagraphs (A) to (D), inclusive, of paragraph (2) is true, the court shall recall the sentence and commitment previously ordered and hold a hearing to *resentence* the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (Italics added.)].) We disagree. Section 1170(d)(5) has been held to be "consistent with the full resentencing rule" described in *People v. Buycks* (2018) 5 Cal.5th 857." (*Montes*, *supra*, 70 Cal.App.5th at p. 48; see *Buycks*, at p. 893 [stating that under the full resentencing rule "the resentencing court may consider 'any pertinent circumstances which have arisen since the prior sentence was imposed' " and may modify "*every* aspect of the sentence"].) Thus, the statutory words that include the word "resentencing" require the court to conduct a full resentencing. However, they do not specify what will or must occur at the resentencing, nor do they require the court to impose a new criminal punishment. Instead, what happens at the resentencing is dictated by other current, applicable laws, here Proposition 57 and Senate Bill 1391. (*Buycks*, at p. 893.)

Finally, the People contend the trial court's ruling "does not treat [Bagsby] equally with other similarly situated defendant[s] who are resentenced under that statute" (Capitalization, boldface and underlining omitted.) They assert that "equal protection of the laws requires that the statute should be applied completely, as it would to a juvenile offender, who had been sentenced to life without the possibility of parole and fell squarely within the operation of Pen. Code § 1170, subdivision (d)(1)(A)." The People's

32

argument is puzzling.  So far as we can determine, Bagsby received no benefit that an equally eligible offender who was sentenced to an explicitly designated life without parole term would not receive if, like Bagsby, they committed and were arrested for their crimes at age 15; were sentenced before Proposition 57 and Senate Bill 1391 were enacted; and sought resentencing under section 1170(d) after serving at least 15 years of their sentence.  The People fail to explain why they perceive a potential for inequity in the trial court's ruling.  We therefore reject their argument because we see no merit in it.[12]

## II.

*We Decline To Reverse the November 13, 2023 Stay Order*

Bagsby cross-appeals the trial court's November 13, 2023 order granting the People's request for a stay of its November 3, 2023 release order "to the filing of the remittitur."  He contends the stay order is unauthorized and imposes a "serious restraint on his liberty" in violation of his rights under the Fourteenth Amendment.  In response, the People contend that (1) the stay order is not appealable, (2) granting the stay was within the trial court's inherent powers, and (3) the stay was properly issued.

We decline to reverse the stay order because Bagsby fails to show it is causing harm that can be remedied through his cross-appeal.  We see no

---

[12]    We have considered all of the arguments the People separately identified under an appropriate heading in their opening brief.  To the extent the People have asserted additional arguments that we have not addressed, they are forfeited because they were not raised in the opening brief under a proper heading.  (See *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 25 [" '[T]he appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; otherwise, the point will be forfeited.' "]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

possibility that reversal of the stay order will afford Bagsby relief he will not receive automatically. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 [courts have a duty " ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it" ' "].) The People point this out in their response to Bagsby's cross-appeal. They state: "Should [Bagsby] prevail in this appeal, the stay will be lifted, the trial court's order of November 3, 2023 will go into effect, and his six-year-plus sentence will have begun on that date. He will have lost nothing." We agree. Even if we were to decide the stay order is appealable and was issued in error, our disposition would take effect only upon remittitur of this matter to the trial court. (See *People v. Awad* (2015) 238 Cal.App.4th 215, 223 [" 'Remittitur transfers jurisdiction back to the inferior court so that it may act upon the case again, consistent with the judgment of the reviewing court.' "].) But with the filing of the remittitur, the stay order will expire under its own terms without the need for us to reverse it.

Bagsby also fails to establish either a due process violation or resulting prejudice. (See *People v. Talhelm* (2000) 85 Cal.App.4th 400, 408, fn. 5 [a violation of state law rights amounts to a due process violation only where it implicates a protected interest in life, liberty, or property]; *People v. Watson* (1956) 46 Cal.2d 818, 836–837 [when an asserted error is one of state law rather than federal constitutional dimension, the appellant bears the burden of demonstrating prejudice "based upon reasonable probabilities rather than upon mere possibilities"].) He expresses concern that the stay order may have "unknown effects on his credit computation to his other case," and he therefore asks us to order his release effective "as of the original release date

34

for the purposes of computing custody credits in any and all other cases." However, we presume regularity (Evid. Code, § 664), and therefore we presume the California Department of Corrections and Rehabilitation (CDCR) will calculate Bagsby's custody credits correctly. To be clear, this means that once this matter is remitted to the trial court, the November 13, 2023 stay order will automatically expire, and the November 3, 2023 order directing Bagsby's release "on these charges" in the San Bernardino Superior Court case No. FSB056642 will take effect. When that occurs, Bagsby must be considered by the CDCR to have been released from the charges in case No. FSB056642 as of November 3, 2023 for the purposes of computing his custody credits in any and all other cases (e.g., Riverside County Superior Court case No. BLF1700232). We presume the CDCR will understand this and will calculate Bagsby's custody credits accordingly.

## DISPOSITION

The trial court's orders are affirmed. As a consequence, upon remittitur of this matter to the trial court, the November 13, 2023 stay order will expire automatically and the November 3, 2023 release order will take effect, entitling Bagsby to be considered released from the charges in San

35

Bernardino Superior Court case No. FSB056642 as of November 3, 2023, for the purposes of calculating his custody credits in any and all other cases.

DO, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.